## APPEAL OF THE EAST TOLEDO PAINT SHOP CO.

Docket No. 3441. Submitted July 22, 1925. Decided November 6, 1925.

*Thomas O. Marlar* and *Harry J. Gerrity, Esqs.,* for the taxpayer.
*J. A. Adams, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the fiscal year ended July 31, 1920, in the amount of $1,871.06. The basis of the appeal is the claim of the taxpayer for classification as a personal-service corporation.

### FINDINGS OF FACT.

The taxpayer is an Ohio corporation with its principal office at Toledo. It was incorporated July 31, 1919, for the purpose of taking over the automobile painting business previously carried on by H. H. Nelson as an individual enterprise.

During the taxable year, 202 shares of capital stock of a par value of $100 per share were outstanding and were held as follows:

*Stockholders and number of shares.*

| | | | |
|---|---|---|---|
| H. H. Nelson | 135 | William Addison Ray | 2 |
| Walter D. Trahern | 20 | Oliver C. Taylor | 10 |
| Beujamin Hipkiss | 5 | Marvin Utter | 4 |
| Floyd L. Newmeyer | 2 | M. R. Coney | 1 |
| Jerry J. Holmes | 10 | Florence Snyder | 1 |
| Wesley L. Thurstin, jr | 5 | Howard Eggleston | 3 |
| Anna M. Nelson | 2 | Cleo Richard Brown | 2 |

All of the stock, except that held by Wesley L. Thurstin, jr., and H. H. Nelson, was issued for cash. Thurstin is an attorney and received his stock for services rendered in connection with the incor-

poration of the company. The stock of H. H. Nelson, to the extent of $8,403.20, was issued for good will.

Of the stockholders listed above, H. H. Nelson, Walter D. Trahern, Benjamin Hipkiss, Floyd L. Newmeyer, and Jerry J. Holmes, were regularly employed in the active conduct of the business. They held 172 shares of the 202 shares of stock outstanding. The duties of these stockholders varied. H. H. Nelson was general manager. Besides soliciting business and making estimates on the prices to be charged for work, he spent some time doing actual painting, most of which consisted of striping. Trahern was shop foreman and, in addition to his duties as foreman, he did striping and lettering. The enameling department was in charge of Hipkiss. Holmes did finishing work and Newmeyer looked after the assembling of cars and their delivery when the work was completed. For these services the stockholders received salaries during the taxable year in the amount of $10,543.42.

During the busy season the taxpayer hired five or six skilled painters to work with the shareholders. They did the same class of work as that done by the shareholders. The average number of such men employed throughout the year was two. They were in addition to the regular force of semiskilled and unskilled labor. The employees last mentioned spent most of their time preparing cars for painting. They washed, cleaned, and scraped the cars, looked after the cleaning of the shop, and did all other work except that requiring skilled labor. Every job done in the shop, however, was under the supervision of one of the stockholders. Wages were paid during the taxable year to employees other than stockholders in the amount of $11,919.72.

The price charged a customer for painting was based upon an estimate of the material and number of hours required to do the job. In some instances there was a fixed price for jobs of a certain class. If the car had previously been cleaned, as was the case in some instances, and was ready for painting when brought in, the number of hours required to complete the job was necessarily reduced and the net charge was likewise less. In some cases the customer furnished the paint for the job, but in most instances paint was used from the taxpayer's stock and the customer was charged retail prices therefor. From one-fourth to one-third of the price charged was based on the number of hours of unskilled labor, while the remainder of the charge was based on materials and the more skilled labor necessary to complete the job.

Practically all of the work of the taxpayer was done on a cash basis. Individuals could obtain no credit, but credit was extended to certain corporations which sent business in regularly. Where the work was done for cash, the customers were required to make

payment between the 1st and 12th of the succeeding month. If such payment was not made within that time, no further work was done.

The taxpayer kept on hand a stock of paint which it charged to customers at retail prices. Some of this paint was sold to customers other than those who had work being done in the shop. The cost of paint sold and charged during the taxable year was $5,530.68.

Immediately after incorporation, the taxpayer purchased a one-story building which it occupied during the taxable year. The taxpayer's equipment consisted in the main of tools for removing paint and cleaning cars, brushes and other implements necessary for painting and finishing work, jacks for use in raising cars, an air compressor, and an oven used for enameling.

The gross receipts from sales of paint and painting work were $44,721.50. The taxpayer's balance sheet as of July 31, 1920, was as follows:

ASSETS.

| | | |
|---|---|---|
| Cash on hand and in bank | | $3,704.30 |
| Accounts receivable | | 3,648.84 |
| Sundry accounts receivable | | 248.41 |
| Real estate (plant, building, and lot) | $21,360.16 | |
| Less Res. depreciation | 951.35 | |
| | | 20,408.81 |
| Stock (one share E. T. Paint S. Co.) | | 100.00 |
| Furniture and fixtures | 604.09 | |
| Less Res. depreciation | 120.80 | |
| | | 483.29 |
| Tools and equipment | 1,731.41 | |
| Less Res. depreciation | 346.20 | |
| | | 1,385.21 |
| Good will | | 8,403.20 |
| Inventories: | | |
| Material | | 2,921.10 |
| Labor | | 1,104.41 |
| Total | | 42,407.57 |

LIABILITIES.

| | | |
|---|---|---|
| Capital stock | $25,000.00 | |
| Less unsold stock | 4,800.00 | |
| | | $20,200.00 |
| Accounts payable | | 631.65 |
| Notes payable | | 11,375.00 |
| Surplus (gain 8–1–19 to 7–31–20) | | 10,200.92 |
| Total | | 42,407.57 |

DECISION.

The determination of the Commissioner is approved.